1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| DALIA LIZETH ROMAN, | Case No.  1:-02-cr-05379-JLT-3 |
| Petitioner, | ORDER REGARDING PETITION FOR WRIT OF ERROR CORUM NOBIS |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

17    Before the Court is a petition for a writ of error corum nobis filed on February 17, 2022 by

18 Dalia Lizeth Roman. She seeks to vacate her sentence and conviction for using a communication

19 facility in connection with a drug offense despite entering a guilty plea.  (Docs. 54, 55, 83, 105.) The

20 Court having reviewed the papers, the record, and the controlling authorities, denies Petitioner's

21 request for an evidentiary hearing and denies the petition.

### JURISDICTION

23    Based on the fact that Petitioner is no longer in custody, the Court has jurisdiction pursuant

24  to 28 U.S.C. § 1331 and the All Writs Act, 28 U.S.C. § 1651.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### LEGAL STANDARDS

**A.    Writ of Error Coram Nobis**

28    A writ of coram nobis is a remedy by which the court can correct errors in criminal convictions

1    where other remedies are not available.  *See United States v. Riedl*, 496 F.3d 1003, 1005-06 (9th Cir.

2    2007) (citing *United States v. Morgan*, 346, U.S. 502, 511 (1954)).        Though Federal Civil

3    Procedure Rule 60(e) abolishes various common law writs, including the writ of coram nobis in civil

4    cases, the writ is still available in criminal proceedings where other relief is wanting.  *Morgan*, 346

5    U.S. at 511; *United States v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015) (same); *Korematsu v. United*

6    *States*, 584 F. Supp. 1406, 1413 (N.D. Cal. 1984) ("[E]xtraordinary instances require extraordinary

7    relief, and the court is not without power to redress its own errors"); *see generally United States v.*

8    *Ayala*, 894 F.2d 425, 428 (D.C. Cir. 1990) ("[F]ederal courts may properly fill in the interstices of the

9    federal post-conviction remedial framework through remedies available at common law").

10   The Court's power to grant coram nobis relief lies in the All Writs Act, 28 U.S.C. § 1651(a).

11   *Morgan*, 346 U.S. at 506-09; *see also United States v. Monreal*, 301 F.3d 1127, 1132 (9th Cir. 2002).

12   In *Morgan*, the Supreme Court characterized the writ as an "extraordinary remedy" that should

13   be granted "only under circumstances compelling such action to achieve justice."  346 U.S. at 511;

14   s*ee also Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("[I]t is difficult to conceive of a

15   situation in a federal criminal case today where [a writ of coram nobis] would be necessary or

16   appropriate[,]") (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)).  The Ninth Circuit

17   has also described the writ as "extraordinary," *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th

18   Cir.1987), and as a mechanism to be "used only to review errors of the most fundamental

19   character[.]"  *Matus–Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002).

20   To qualify for coram nobis relief, Petitioner must satisfy four requirements: (i) a more usual

21   remedy is not available, (ii) valid reasons exist for not attacking the conviction earlier, (iii) adverse

22   consequences exist from the conviction to satisfy the case or controversy requirement of Article III,

23   and (iv) the error is of the most fundamental character.  *Hirabayashi*, 828 F.2d at 604 (citing *United*

24   *States v. Mayer*, 235 U.S. 55, 69 (1914)); s*ee also Chan*, 792 F.3d at 1153 (same, quoting

25   *Hirabayashi*); *Matus-Leva*, 287 F.3d at 760 ("Because these requirements are conjunctive, failure to

26   meet any one of them is fatal.").

27   Under Ninth Circuit precedent, "petitions for a writ of coram nobis should be treated in a

28   manner similar to [28 U.S.C.] § 2255 habeas corpus petitions."  *Korematsu*, 584 F. Supp. at

1412 (citing *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981)).  For example, §

2255 considerations apply in determining whether an evidentiary hearing is required.  *Taylor*, 648

F.2d at 573, n.25; *see also Korematsu*, 584 F. Supp. at 1412 (same).

## ANALYSIS

**A.    Fundamental Error**

    **1.    Ineffective Assistance by Defense Counsel Elia**

Petitioner asserts that defense counsel Elia was ineffective by (1) affirmatively misadvising her

as to the immigration consequences of her guilty plea, (2) failing to accurately advise her as to

immigration consequences of her guilty plea, and (3) failing to avoid or mitigate the collateral

immigration consequences raised by her guilty plea.

A petitioner can satisfy the fundamental error requirement by establishing that she received

ineffective assistance of counsel in her criminal case.  *United States v. Kwan*, 407 F.3d 1005, 1014

(9th Cir. 2005) abrogated on other grounds by *Padilla v. Kentucky*, 559 U.S. 356 (2010)); *see also*

*Rianto v. United States*, 2017 WL 3334011, at *3 (E.D. Cal. Aug. 4, 2017) (citing *Kwan*, 407 F.3d at

1014; *United States v. Abramian*, 2014 WL 4702584, at *2 (C.D. Cal. Sept. 22, 2014) (attacking

conviction on grounds ineffective assistance of counsel constituted fundamental error); *United States*

*v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995) (same).

To demonstrate ineffective assistance of counsel, the petitioner "must prove (1) that his

counsel's performance fell below an objective standard of reasonableness, and 2) that the deficiency in

his counsel's performance prejudiced him."  *Kwan*, 407 F.3d at 1014-15 (citing *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984)); *see also Hamilton v. Ayers*, 583 F.3d 1100, 1129-30 (9th Cir.

2009) (explaining that counsel's performance must be evaluated based on the standards existing at the

time of performance); *Rocha v. United States*, 2015 WL 92945, at *3 (C.D. Cal. Jan. 7, 2015) (same in

context of corum nobis relief on a *Kwan* claim). The Court has observed in a separate proceeding that:

> To prevail on [ ] an IAC claim in the plea-bargaining process, a movant must
> demonstrate that his counsel's advice was "so incorrect and so insufficient that it
> undermined [movant's] ability to make an intelligent decision about whether to accept
> the [plea] offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002).

*United States v. Sodhi*, 2022 WL 18027840, at *9 (E.D. Cal. Dec. 30, 2022).

1             ***a.      Reasonableness of Elia's Conduct***

2    The Court will first consider whether, if Petitioner's allegations were proven to be true, Elia's

3    performance fell below an objectively reasonable standard.

4             (1)      Affirmative Misadvisement of Immigration Consequences

5    Petitioner alleges that Elia affirmatively misadvised her regarding the collateral immigration

6    consequences of her guilty plea.  Petitioner avers in her declaration in support of the petition that Elia

7    told her:

8            [A]fter [she] went to prison, [she] would face deportation if the INS came and picked
        [her]up, but that [she] would be safe from immigration consequences if the INS did not
9            come and pick [her] up.

10   (Doc. 105-3 at 2-3.)  This statement, according to Petitioner, affirmatively misled her that she could be

11   eligible for legal status following her guilty plea, when in fact she was pleading to a controlled

12   substance aggravated felony that made her permanently ineligible for legal status in the United States.

13   (*See id*.at 3-4; Doc. 105 at 5-6, 8 citing *Chan*, 792 F.3d at 1154, and *Kwan*, 407 F.3d at 1015

14   (affirmatively misleading a client regarding the immigration consequences of a conviction can

15   constitute the basis for an IAC claim); *see also* Doc.105-1 at 10 citing *Tejeda v. Barr*, 960 F.3d 1184,

16   1186 (9th Cir. 2020) (conviction for controlled substance offense renders noncitizen deportable), 8

17   U.S.C. § 1229b(a)(3) (noncitizen convicted of aggravated felony is ineligible for cancellation of

18   removal); Doc. 105-4 at 3-5; Doc. 119 at 11 citing Doc. 105-6 at 2 (same).)

19   Petitioner further alleges that nearly two decades passed before she learned Elia had misadvised

20   her.  She alleges that, during consultations with post-conviction counsel in October 2020, she learned

21   for the first time that her conviction left her permanently ineligible for lawful status in the United

22   States; and that her only option to lawfully re-enter the United States was to seek post-conviction

23   relief and vacate her conviction.  (*See* Doc. 105-3 at 3; Doc. 105-6 at 2; Doc. 119 at 11-13.)

24   Because Petitioner's conviction was finalized prior to *Padilla*, she must show that Elia did not

25   merely refrain from advising her about the immigration consequences of her plea, but that he

26   responded to her specific inquiries regarding immigration consequences with an  affirmative

27   misadvisement purportedly based upon his immigration expertise.  *Kwan*, 407 F.3d at 1015-16; *Chan*,

28

792 F.3d at 1152-54 (explaining that *Kwan's* holding, that affirmative misadvisement by counsel regarding immigration consequences constitutes deficient performance under *Strickland*, survives *Padilla* and applies retroactively to conduct that occurred prior to 2005, while noting that *Padilla's* 2010 holding that defense counsel must inform his client whether her plea carries a risk of deportation was not retroactive); *see also Khatkarh v. Becerra*, 442 F. Supp. 3d 1277, 1291 (E.D. Cal. 2020) ("Defendants whose convictions became final prior to Padilla . . . cannot benefit from its holding."); *United States v. Abramian*, 2014 WL 2586666, at *5 (C.D. Cal. June 10, 2014) (reviewing federal and state court decisions prior to 2002 concluding that counsel's affirmative misadvisement of the immigration consequences of a criminal conviction could constitute ineffective assistance of counsel). The Court finds that Petitioner has not pointed to facts in the record supporting a cognizable claim for relief under *Kwan*, that Elia affirmatively misadvised her as to collateral immigration consequences of her guilty plea.[1]

Petitioner acknowledges Elia's obligation under *Kwan* was to provide correct advice about the immigration consequences of the plea in response to her direct request and based upon Elia's immigration expertise.  (*See* Doc. 105-1 at 19; Doc. 119 at 13-14 citing *United States v. Couto*, 311 F.3d 179, 187-188 (2d Cir. 2002).)   But  Petitioner nowhere points to facts before the Court that she made any "direct request" to Elia for advice regarding the immigration consequences of her guilty plea.  Nor does Petitioner point to any facts before the Court that Elia represented to her that he possessed immigration expertise.

Moreover, the affirmative misadvisement Petitioner attributes to Elia, that "after [she] went to prison, [she] would face deportation if the INS came and picked [her] up, but that [she] would be safe from immigration consequences if the INS did not come and pick [her] up[,]"  (Doc. 105-3 at 2-3), does not affirmatively address the collateral immigration consequence she raises in the petition, i.e. her post-plea eligibility for immigration status upon re-entry to the United States.

Petitioner concedes as much, that Elia did not actually address the issue of immigration status at all.  (Doc. 119 at 11, 14.)  Petitioner explains that she "reasonably concluded" from Elia's noted

---

[1] The record reflects that Elia's case file has been destroyed, and that Elia died in April of 2022.  (*See* Doc. 105-8 at 2; Doc. 117 at 4.)

statement that the only relevant consequence of her guilty plea was deportation, and that she would not be permanently barred from obtaining lawful status in the future.  (*Id.*)  Petitioner further explains that Elia's advice "clearly conveyed" to her that immigration status was not in issue, and "unambiguously conveyed that she could possibly retain her residency status[,] and did not foreclose the possibility of re-immigrating in the future."  (Doc. 119 at 14.)  Petitioner also points to facts in the record that she was unaware of her ineligibility for lawful re-entry status until her noted consultation with post-conviction counsel in 2020, as evidence supporting her view of Elia's alleged statement.  (*Id.* citing Doc. 119-1; *see also* Doc. 105 at 6-8.)

Tellingly, immigration attorney Christopher Todd, whose February 9, 2022 declaration is proffered in support of the petition, appears to concede that the accuracy of Elia's alleged statement is driven by context.  (*See* Doc. 105-4 at 6 ¶ 26.)  Petitioner has not pointed to facts in the record setting the context for Elia's statement, e.g., by showing Elia was responding to her specific inquiry on a matter within his purported immigration expertise. Thus, the Court finds that Petitioner's allegation that Elia affirmatively misadvised her of collateral immigration consequences raised by her guilty plea, taken as true, do not rise to the level of deficient conduct under professional standards prevailing in 2003.  S*ee e.g., Abramian*, 2014 WL 4702584, at *3 (finding that petitioner did not adequately plead fundamental error based on ineffective assistance of counsel because "[S]he neither alleges nor adduces evidence that her attorney affirmatively misadvised her concerning the immigration consequences of the conviction[.]"); *United States v. Zhu*, 2016 WL 729525, at *3 (N.D. Cal. Feb. 24, 2016) (petitioner's vague declaration stating what he "understood" defense counsel to tell him regarding probability of deportation not an affirmative misadvisement under *Kwan*); *Velazquez v. United States*, 2014 WL 2738524, at *11 (D. Ariz. June 17, 2014) (concluding that "petitioner's unsubstantiated assertion that he 'was actually provided with incorrect information'. . . is not sufficient to bring his [IAC] claim within the ambit of *Kwan*"); *cf. Kwan*, 407 F.3d at 1015-16 (finding ineffective assistance where petitioner's attorney held himself out as an expert regarding the immigration consequences of criminal convictions, and affirmatively misinformed petitioner about whether his guilty plea would render him deportable).

///

(2)      **Failure to Advise of Immigration Consequences**

Petitioner alleges that Elia failed to advise her that her guilty plea and conviction thereon constituted a deportable aggravated felony that would cause her to lose LPR status and render her inadmissible and permanently ineligible for status in the United States.  (Doc. 105 at 5, 8; Doc. 105-3 at 9; *see also* Doc. 119 at 11 citing Doc. 105-6 at 2; Doc.105-1 at 10 citing *Tejeda*, 960 F.3d at 1186; *Guerrero-Roque v. Lynch*, 845 F.3d 940, 942 (9th Cir. 2017) (controlled substance offense renders noncitizen inadmissible); *United States v. Jiminez*, 533 F.3d 1110, 1112-1113 (9th Cir. 2008) (conviction for violating 21 U.S.C. § 843(b) constitutes a controlled substance offense); 8 U.S.C. § 1229b(a)(3) (noncitizen convicted of aggravated felony is ineligible for cancellation of removal); Doc. 105-4 at 3-5).  Petitioner re-argues that "Elia's failure to mention the subject of lawful status in the United States even while informing her of the possibility of deportation unequivocally conveyed to her that she could possibly retain or restore her lawful status."  (Doc. 119 at 14.) However, these allegations that Elia failed to advise her of immigration consequences do not raise a cognizable claim for relief under the professional standards prevailing in 2003 because as discussed above, *Padilla* is not retroactive to Petitioner's final conviction and sentence.  *See Hamilton*, 583 F.3d at 1129–30 (counsel's performance must be evaluated based on the standards existing at the time of performance).

As noted, in 2010 the Supreme Court held that defense attorneys have a duty to correctly advise their clients of the risks of deportation associated with criminal convictions.  *Padilla*, 559 U.S. at 367-69.  Thereafter, the Supreme Court held that the duty of defense counsel recognized in *Padilla* does not apply retroactively to attorney conduct that occurred before 2010.  *Chaidez v. United States*, 568 U.S. 342, 347, 357 (2013); *see generally Teague v. Lane*, 489 U.S. 288 (1989) (discussing retroactivity of criminal procedure decisions). Thus, Petitioner cannot rely on *Padilla* and its progeny to claim that Elia failed to advise her as to collateral immigration consequences of her guilty plea.  *See United States v. Flores*, 2013 WL 5670924, at *2 (S.D. Cal. Oct. 15, 2013) ("Defendant cannot avail himself of the writ of coram nobis to attack his prior conviction because . . . the relief he seeks is unavailable in light of the non-retroactivity of *Padilla*.").  Furthermore, Petitioner cannot state a cognizable failure to advise claim under *Kwan*, for the reasons discussed above.

The Court finds Petitioner's allegations that Elia failed to advise her of collateral immigration

1   consequences raised by her guilty plea, taken as true, do not rise to the level of deficient conduct under

2   standards prevailing in 2003.  *See Padilla*, 559 U.S. at 367-69; *Chaidez*, 568 U.S. at 347, 357.

3              **(3)     Failure to Avoid or Mitigate Collateral Immigration Consequences**

4           Petitioner alleges that Elia was deficient by failing reasonably to avoid or mitigate collateral

5   immigration consequences during plea negotiations and sentencing.  (*See* Doc. 105-1 at 10, 14, 20-

6   22.)  According to Petitioner, she could have plead guilty to alternate charges yielding a comparable

7   sentence but with more favorable immigration consequences.  (*Id.*; *see also* Doc. 105-4 at 5-6.)

8   However, this allegation is not raised in the underlying petition.  (*See* Doc. 105.)  It not a basis for

9   relief.  (*Id.*)  In any event, Petitioner is not entitled to relief on this ground because she has not

10  proffered authority and facts in the record that Elia's alleged failure to avoid or mitigate collateral

11  immigration consequences fell below the then prevailing objective standard of reasonableness.

12          "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the

13  defendant must show that counsel's representation fell below an objective standard of

14  reasonableness."  *Strickland*, 466 U.S. at 670.  The objective standard of reasonableness is determined

15  by the "prevailing professional norms" of the legal community, as reflected in "American Bar

16  Association standards and the like. . . ."  *Padilla*, 559 U.S. at 367 (citing *Strickland*, 466 U.S. at 688).

17  Petitioner does not make any sufficient showing that professional norms prevailing in 2003 required

18  counsel representing non-citizens in criminal proceedings to avoid or mitigate collateral immigration

19  consequences.  The authorities relied upon by Petitioner in this regard are distinguishable on legal and

20  factual grounds, and not a basis to find such a duty of care.  (*See* Doc. 105-1 at 20-22 citing *Anik Roy*

21  *v. United States*, 347 F. Supp. 3d 230, 242 (S.D.N.Y. 2018) (non-binding § 2255 case decided under

22  *Padilla* finding counsel ineffective by failing to seek a one-day sentence reduction in avoidance of

23  mandatory removal under Second Circuit precedent); *United States v. Burrows*, 872 F.2d 915, 918

24  (9th Cir. 1989) (§ 2255 case relating to counsel's alleged ineffective failure to investigate mental state

25  defense at trial); *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (28 U.S.C. § 2254 capital case relating to

26  alleged ineffective failure by counsel to investigate and develop mitigation defense for sentencing

27  phase); *United States v. Castro*, 26 F.3d 557 (5th Cir. 1994) (non-binding corum nobis case relating to

28  alleged ineffective failure by counsel to request at sentencing a discretionary judicial recommendation

against deportation available under former 8 U.S.C. § 1251(b) [repealed by the Immigration Act of 1990 as of November 29, 1990]); *Burley v. Cabana*, 818 F.2d 414, 415 (5th Cir. 1987) (non-binding § 2254 case relating to alleged ineffective failure by counsel to inform the trial court of sentencing options unrelated to immigration consequences); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (§ 2254 case relating to alleged ineffective failure by counsel at entry of guilty plea to properly advise on parole eligibility unrelated to immigration consequences).

Even if Elia had a duty to avoid or mitigate collateral immigration consequences, Petitioner does not point to facts in the record that Elia reasonably could have avoided or mitigated collateral immigration consequences in this case.  Particularly, Petitioner makes no  showing on the factual record of contemporaneous similarly situated defendants who plea bargained for conviction and sentence with more favorable immigration consequences.   Petitioner proffers only the declaration of immigration attorney Todd, and based thereon argues that an alternate charge of felony misprision under 18 U.S.C. § 4 might have avoided adverse immigration consequences in her case.[2]   Notably, in the Ninth Circuit "facilitation" for purposes of § 843(b) amounts to "aiding and abetting."  *Jimenez*, 533 F.3d at 1114.   Neither Todd nor Petitioner address how felony misprision could equate to facilitation.

Assuming without deciding that Todd's declaration is properly before the Court, Todd offers nothing more than speculation that such an alternative charge might have been available on these facts and circumstances.  (*See e.g.*, Doc. 105-4 at 5-6.) It remains that under the then prevailing *Kwan* standard, Elia had no duty to advise Petitioner regarding collateral immigration consequences, much less avoid or mitigate those consequences.  *See Kwan*, 407 F.3d at 1015; *Hamilton*, 583 F.3d at 1129–30.   Furthermore, nothing in the record before the Court suggests Petitioner then raised to Elia or the Court any plea related concern regarding collateral immigration consequences.  Though Petitioner may now contend that collateral immigration consequences were her paramount concern at plea entry, nothing in the record suggests that was the case in 2003, at the time her plea was taken.

---

[2] 18 U.S.C. § 4 states that any person who, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

### b.        Prejudice from Elia's Alleged Unreasonable Conduct

The Court need not proceed to *Strickland's* prejudice prong because Petitioner has not shown Elia acted deficiently, i.e., in an objectively unreasonable manner.  Even if Petitioner had shown Elia acted unreasonably as alleged, the factual record before the Court does not demonstrate prejudice raised thereby, as discussed below.

To establish prejudice for purposes of an IAC claim, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Hedlund v. Ryan*, 854 F.3d 557, 582 (9th Cir. 2017) (quoting *Strickland*, 466 U.S. at 694).   "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "  *United States v. Chan*, 732 F. App'x 501, 503 (9th Cir. 2018) (citing *Lee v. United States*, 582 U.S.  357, 364-65 (2017)) (quoting *Hill*, 474 U.S. at 59);[3] *see also United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004) (same).  According to the Ninth Circuit:

> [T]o determine whether a defendant would have gone to trial in the hypothetical scenario where his attorney had provided competent advice, we are limited to evidence contemporaneous to the guilty plea.  Looking at the contemporaneous evidence, we assess (1) how likely the defendant would be to prevail at trial; (2) the defendant's relative connections to the United States and to his country of citizenship; (3) the relative consequences of the defendant's guilty plea compared to a guilty verdict at trial; and most importantly, (4) any evidence of how important immigration consequences were to the defendant at the time he pleaded guilty.

*United States v. Rodriguez,* 49 F.4th 1205, 1214 (9th Cir. 2022) (citing *Lee*, 582 U.S., at 369-70).

### (1)        Direct Consequences of the Guilty Plea

The factual record before the Court reflects that Elia reasonably negotiated a plea deal with favorable direct consequences, dismissing two felony drug counts in exchange for the guilty plea on the single phone count under 21 U.S.C. § 843(b).  (*See* Doc. 105-2 at 6.) Also, Elia reasonably sought

---

[3] See Federal Rule of Appellate Procedure 32.1 generally governing citation of unpublished judicial decisions issued on or after Jan. 1, 2007; U.S. Ct. of App. 9th Cir. Rule 36-3.

a downward departure at the sentencing hearing.  (*See* Doc. 105-5 at 4-16.)  Therein, Elia referred to Petitioner's lack of criminal history; minimal role in the crime orchestrated by her common-law husband; her sympathetic family situation as a single mom with a young son; her ties to the U.S.; and the high likelihood of deportation.  (*See* Doc. 105-5 at 4-16; Doc. 118.)  Notably, the prosecutor argued there was no justification for downward departure, observing Petitioner's refusal to plead guilty until just before trial, and that the plea agreement gave Petitioner "less time than she would have gotten even with a minimal role in this offense[.]" (Doc. 105-5 at 11-15.) The sentencing Court denied downward departure, in the course thereof observing that Petitioner ended up with a "substantially reduced sentence over what she would have faced if she had gone to trial."  (Doc. 105-5 at 19-20.)

Petitioner does not point to facts in the record that Elia's allegedly deficient conduct was prejudicial due to the direct consequences of her guilty plea. Thus, the Court finds that Petitioner has not shown prejudice as to direct consequences of her guilty plea.

### (2)    Collateral Immigration Consequences of the Guilty Plea

The factual record before the Court does not show a reasonable probability of more favorable immigration consequences had Petitioner rejected the guilty plea.  *See Kwan*, 407 F.3d at 1017-18 ("We have found prejudice where a non-citizen demonstrates clearly that she placed a particular emphasis on the immigration consequence of a plea in deciding whether or not to accept it."). Petitioner argues that absent Elia's allegedly deficient conduct "she would not have agreed to plead guilty . . . [that] her number one priority at the time of her guilty plea was to be with her then-three-year-old son. . . ."  (Doc. 105 at 5.)  Similarly, Petitioner avers in her declaration supporting the petition that absent Elia's allegedly deficient conduct, "[she] would never have done anything voluntarily that would have resulted in [her] being permanently separated from [her son]."  (Doc. 105-3 at 2-3.)  Petitioner also points to evidence that as her sentence was ending, years after her guilty plea, she contacted court and corrections officials requesting to remain in the U.S.  (Doc. 119 at 18 citing Doc. 119-1.)

However, Petitioner has not pointed to record facts contemporaneous with her guilty plea that collateral immigration consequences were of paramount concern to her.  *Rodriguez-Vega*, 797 F.3d at

788; *cf. Lee*, 582 U.S. at 369 (reasonable probability of plea rejection leading to mandatory deportation shown where "deportation was the determinative issue in [defendant's] decision whether to accept the plea deal.").

Furthermore, while it is well documented that "an alien charged with a crime . . . would factor the immigration consequences of conviction into deciding whether to plea or proceed to trial[,]" *Magana-Pizano v. INS*, 200 F.3d 603, 612 (9th Cir. 1999), Petitioner does not point to facts that "[h]ad [she] refused to accept the plea agreement, [she . . . ] would have been successful at trial or otherwise avoided the immigration consequences [s]he now faces[,]" *Rocha*, 2015 WL 92945, at *4.

As discussed above, Petitioner makes no factual showing of contemporaneous similarly situated defendants who plea bargained for conviction and sentence with more favorable immigration consequences. *See e.g., Rodriguez-Vega*, 797 F.3d at 788 (petitioner may show a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense).  Here again, immigration attorney Todd's speculation in this regard falls short. (*See e.g.*, Doc.  105-4  at 5-6 citing *Robles-Urea v. Holder*, 678 F.3d at 711 n.8 (case specific discussion of misprision of felony in context of removability).)

Petitioner argues factors for sentencing consideration had she gone to trial including her strong ties to the U.S.; her status as a single mom of a young son; her lack of criminal history; and her minor participation in the underlying crime.  (*See* Doc. 105-1 at 12-13.)  But the strength of these factors wanes where immigration consequences were not paramount to Petitioner at the time of plea entry. Moreover, Elia's noted motion for downward departure put such matters before the Court at sentencing.

Prejudice under *Strickland* does not depend on the extent to which criminal proceedings involved collateral immigration consequences.  *See Rocha*, 2015 WL 92945, at *4 (finding petitioner failed to demonstrate prejudice because, "[h]ad Petitioner refused to accept the plea agreement, there is no evidence that Petitioner would have been successful at trial or otherwise avoided the immigration consequences he now faces").  Thus, the Court finds that Petitioner has not shown prejudice as to collateral immigration consequences of her guilty plea.

**2.      Involuntary Plea**

Petitioner, separate from her IAC claim above, asserts that Elia's noted affirmative misadvice regarding collateral immigration consequences induced her to plead guilty, rendering her guilty plea involuntary and a violation of the Fifth and Fourteenth Amendments.  (*See* Doc. 105-1 at 9-10; Doc. 119 at 19-21; *see also*  Doc. 105-3 at 2-3; Doc. 105-4 at 6.)  According to Petitioner, she was deprived of the opportunity to meaningfully choose whether to accept the plea bargain, prevail upon counsel to negotiate an alternative immigration safe plea bargain, or proceed to trial.  (Doc. 119 at 21.)

However, such a due process claim is not included in the petition, and thus is not a basis for relief.  (Doc. 105.)   In any event, the claim lacks merit, as discussed below.

Challenges to guilty pleas in the federal habeas context are generally limited to whether (1) the plea was voluntary and intelligent; and (2) the petitioner received constitutionally adequate assistance of counsel with regard to the plea process.  *United States v. Broce,* 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.") "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508-09 (1984).  To determine voluntariness, the Court examines the totality of the circumstances.  *Iaea v. Sunn,* 800 F.2d 861, 866 (9th Cir. 1986). "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." *Little v. Crawford,* 449 F.3d 1075, 1080 (9th Cir. 2006).

In this case, the Court finds that Petitioner's plea was not rendered involuntary on grounds of ineffective assistance by Elia, for the reasons stated.  *See Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 56-57) ("[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective."). Furthermore, to the extent Petition can and does assert her guilty plea was involuntary on grounds other than IAC, she fails to carry her burden.

A plea is voluntary if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970).  "[A] plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats

(or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States,* 397 U.S. 742, 755 (1970).

Applying these standards here, Petitioner does not point to facts in the record that she was unaware of the direct consequences of the guilty plea, or that the plea was the product of coercion, misrepresentation, or improper promise.  The Ninth Circuit has described direct consequences as consequences that have "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000).  Petitioner's plea transcript is evidence that she was aware of the direct consequences of her guilty plea.  (*See* Doc. 105-2.)

Furthermore, Petitioner does not provide legal authority that her alleged lack of awareness of collateral immigration consequence is a basis to find her plea involuntary.  *See Sanchez v. United States,* 572 F.2d 210, 211 (9th Cir. 1977) ("[A]lthough a defendant is entitled to be informed of the direct consequences of the plea, the court need not advise him of all the possible collateral consequences."); *see also Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988) (citing *United States v. King*, 618 F.2d 550, 552 (9th Cir.1980)) (same).  It remains that neither *Kwan* nor *Padilla* require advisement of collateral immigration consequences on the facts and circumstances of this case.  *See Littlejohn*, 224 F.3d at 965 (citing *Torrey*, 842 F.2d at 235 (a guilty plea is voluntary only if it is entered by one fully aware of the direct consequences of his plea; district courts need not advise defendants of the collateral consequences of their guilty plea).

Petitioner has not demonstrated on the factual record that the plea consequence in issue under Elia's alleged affirmative misadvisement is other than a collateral consequence.  *See  Littlejohn*, 224 F.3d at 965 (citing *Torrey,* 842 F.2d at 236) (where the consequence is contingent upon action taken by an individual or individuals other than the sentencing court-such as another governmental agency or the defendant himself - the consequence is generally "collateral."); *see also United States v. Amador-Leal*, 276 F.3d 511, 517 (9th Cir. 2002) abrogation recognized by *U.S. v. Bonilla*, 637 F.3d 980, 982 (9th Cir. 2011) (immigration consequences continue to be a collateral consequence of a plea

and the resulting conviction).

The Court finds Petitioner's reliance upon *United States v. Cortez,* where the court, at plea taking, explicitly misadvised the defendant as to availability of a post-plea motion, is misplaced given the noted facts and circumstances before the Court here.  (*See* Doc. 119 at 20 citing 973 F.2d 764, 768 (9th Cir. 1992).)  Particularly, unlike in *Cortez*, Petitioner was not misinformed about the actual direct effect of an unconditional guilty plea.  *See Cortez*, 973 F.2d 768-69.  Petitioner was aware at the plea proceeding that there likely would be adverse immigration consequences raised by her guilty plea including but not limited to deportation and denial of naturalization.  (*See* Doc. 105-2 at 9.)

**B.    Evidentiary Hearing**

Petitioner argues entitlement to an evidentiary hearing on grounds the petition states a cognizable claim for relief.  (Doc. 119 at 21.)  "[P]etitions for a writ of coram nobis should be treated in a manner similar to [28 U.S.C.] § 2255 *habeas corpus* petitions."  *Korematsu*, 584 F. Supp. at 1412 (citing *Taylor*, 648 F.2d at 573).  Therefore, in determining whether an evidentiary hearing is required, § 2255 considerations apply.  *Taylor*, 648 F.2d at 573 n.25; *see also Korematsu*, 584 F. Supp. at 1412 (same).

In reviewing a motion brought pursuant to § 2255, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (citing 28 U.S.C. § 2255(b)).

When a § 2255 movant raises a claim of ineffective assistance of counsel, the court should hold an evidentiary hearing unless "something in the record conclusively shows that [movant's] trial attorney was not ineffective."  *Burrows*, 872 F.2d at 917.   In deciding whether a § 2255 movant is entitled to an evidentiary hearing, the district court should determine whether, accepting the truth of movant's factual allegations, he could prevail on his claim.  *Blaylock*, 20 F.3d at 1465; *see also United Sates v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (to be entitled to an evidentiary hearing the movant must provide specific factual allegations which, if true, state a claim on which relief under § 2255 could be granted). The court may deny an evidentiary hearing on a § 2255 motion "if the

petitioner's allegations, viewed against the record, fail to state a claim or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).

Here, the Court finds that no evidentiary hearing is required because the petition and the facts and records of the case before the Court conclusively show that Petitioner is not entitled to relief, for the reasons stated. 28 U.S.C. § 2255(b); *see also McMullen*, 98 F.3d at 1159 (the court may deny an evidentiary hearing on a § 2255 motion if the petitioner's allegations, viewed against the record, fail to state a claim).

**C.    Conclusions**

Petitioner has not stated a cognizable claim to corum nobis relief[4] and has not demonstrated an entitlement to an evidentiary hearing. Thus, the Court **ORDERS**:

1.    Petitioner's request for evidentiary hearing (Doc. 105) is **DENIED**.

2.    The petition for writ of error corum nobis (Doc. 105) is **DENIED**.

3.    The Clerk is directed to enter judgment for the respondent and close the case.

IT IS SO ORDERED.

Dated:    **July 18, 2024**

UNITED STATES DISTRICT JUDGE

---

[4] The Court need not and does not address Petitioner's arguments relating to the other three prongs under the *Hirabayashi* standard.  *See Matus-Leva*, 287 F.3d at 760.